James C. Morton, Esq. (JM 6151)  
Suite 1150, Two Midtown Plaza  
1349 West Peachtree Street  
Atlanta, Georgia 30309  
(404) 966-5133  

Hearing Date: July 11, 2006  
10:00 a.m.

Counsel for Fred Carowick, Jr., Richard Cassett,  
Michael Goff, Kenneth Kasprzak, Anthony Mitro, Todd K. Schwartz,  
Ronald Stipp, Robert Tomaszewski and Robert Veltri

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**  
------------------------------------------------------------x  

In re  
GLOBE METALLURGICAL INC.,  

              Debtor.

: Chapter 11  
: Case No. 03-12006 (SMB)  

------------------------------------------------------------x

### BRIEF IN SUPPORT OF MOTION BY NIAGARA SALARIED EMPLOYEES FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 503, 1141 AND 1142 TO COMPEL COMPLIANCE BY DEBTOR WITH PLAN OF REORGANIZATION OR, ALTERNATIVELY, TO ALLOW ADMINISTRATIVE CLAIM

Fred Carowick, Jr., Richard Cassett, Michael Goff, Kenneth Kasprzak, Anthony Mitro, Todd K. Schwartz, Ronald Stipp, Robert Tomaszewski and Robert Veltri (the "Niagara Salaried Employees" or "Movants"), by their attorney James C. Morton, Esq., hereby submit this Brief In Support Of Motion By Niagara Plant Salaried Employees For An Order Pursuant To 11 U.S.C. §§ 503, 1141 And 1142 To Compel Compliance By Debtor With Plan Of Reorganization Or, Alternatively, To Allow Administrative Claim. Based upon the argument and authorities herein, the Movants pray for the relief requested in their Motion.



RECEIVED  
JUN 28 2006

## Introduction

On September 21, 2003, six months post-petition, the Debtor temporarily suspended operating its plant in Niagara Falls, New York without providing the sixty (60) day prior notice to its employees required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §2101 et seq. (the "WARN Act"). The Niagara Plant has remained idle since then. The Debtor employed the Movants at the Niagara Plant at the time of that temporary closure.

From the time the Debtor closed the Niagara Plant, it repeatedly has asserted that the closure was temporary. The Debtor's "WARN Act Notice" (Exhibit B attached) itself stated that it "expect[ed] to temporarily close" the Niagara Plant.

The notice letter itself appears carefully designed to mislead the Movants to believe they did not have any right to WARN Act compensation. The first sentence referred to "seeking capital to continue operations", while the last paragraph asserted that the notice was given "as soon as practicable" in light of "unforeseeable business circumstances" and the Debtor's "efforts to obtain new capital". These are all terms of significance under the WARN Act, signaling exceptions to the notice requirement. *See generally* *29 USC §2102(b); 20 CFR §639.1 et seq.* None of those exceptions applied to the Debtor, however. Nothing occurred in September 2003 that was "unforeseeable" and that caused the Debtor to close the Niagara Plant precipitously. *See In re United Healthcare Systems, Inc.*, 200 F.3d 170 (3rd Cir. 1999) (continuous financial difficulties made closing foreseeable under WARN Act). Nor was the Debtor prevented from giving the required notice by concern that the notice would jeopardize its capital raising efforts. The Debtor has had only one lender and investor since December 2002, Marco International Inc. and its controlled affiliates MI Capital Corp. and Five Lakes Funding Corp. Since Marco controlled the Debtor after December 2002, including at the time the Debtor closed the Niagara

Plant, any suggestion that the required notice would jeopardize Marco's further lending is facially incredible. Only by showing that notice would have jeopardized the capital raising effort could the Debtor justify shortening the notice period. *See* *20 CFR §639.9(a)(4)*. However as the notice letter reflects, the Debtor misled the Movants by suggesting they were not entitled to WARN Act compensation for that reason.

The Debtor reiterated its "temporary closure" assertion in "Debtor's Objection To The Motion Of Niagara Mohawk Power Corporation To Compel Debtor To Assume Or Reject Executory Contracts" [233], filed November 14, 2003. There, the Debtor stated in paragraph 12:

> The Debtor has determined that it would be in the best interests of its overall operations and its ability to reorganize effectively to close the Niagara Facility, and to lay off its employees at that facility, <u>on a temporary basis</u>. Thus, the Debtor's Niagara Facility was <u>temporarily shut down</u> on or about September 21, 2003. The Debtor does, however, remain hopeful that the Niagara Facility can once again be profitable, and thus <u>resume operations, in the future</u>. (emphasis supplied)

The Debtor continued to state that position in blocking the Movants' access to their 401k retirement plan funds after the Debtor closed the Niagara Plant. By law, terminated employees are entitled to receive the funds in a 401k plan sponsored by a former employer. However, when the Niagara Plant employees, including the Movants, attempted to obtain their 401k account balances, into which only they, and not the Debtor, had contributed, the Debtor prevented them from doing so by insisting to the 401k plan administrator that they were still employed by the Debtor. Many of the Niagara Plant employees urgently needed those funds in order to meet their expenses, such as health care premiums and mortgage payments, because of the Debtor's precipitate termination of their paychecks. The WARN Act was intended to ameliorate just that situation. Yet the Debtor not only refused to pay the WARN Act compensation, but blocked the employees' access to their own money in their 401k plan accounts. Only months later, after the New York State Attorney General's Office intervened, did the Debtor finally communicate to the

401k plan administrator the truth: that the plan participants no longer were employed, and were entitled to access their accounts. See Article, *Ex-Workers: Globe Took Advantage Of Employees As Well As Community*, Niagara Falls Reporter, March 1, 2005 (Exhibit C attached).

In retrospect, it now seems clear that the Debtor merely sought, for its own cynical reasons, to encourage the myth of a temporary Niagara Plant closure. To avoid the loss of its valuable low-cost power contracts with the New York Power Authority and Niagara Mohawk Power Co., the Debtor was required to maintain certain employment levels. Had the Debtor announced that it was closing permanently the Niagara Plant, it would have lost those contracts under their terms. Instead, the Debtor sought to preserve and assume those contracts post-petition, but then to sell the power under those contracts to Sempra Energy, an electric power trader. The Debtor planned to repurchase from Sempra an equivalent amount of power at its Ohio plant, profiting from the difference in prices. See *"Debtor's Objection To The Motion Of Niagara Mohawk Power Corporation To Compel Debtor To Assume Or Reject Executory Contracts"* [233], filed November 14, 2003. Under the federal and state law creating the low-cost power allocation from the Niagara Power Project, the power may only be used specifically and exclusively to support job creation in Niagara Falls and adjacent areas within thirty (30) miles of the Niagara power plant. The Court refused to permit the Debtor to misappropriate that low-cost power, and, in the process, the Debtor lost the ability to assume those contracts. See Editorial, *Keep low-cost power local*, Niagara Gazette, December 13, 2003 (Exhibit D attached).

Under the WARN Act, the Debtor was required to provide the Movants with sixty (60) days advance notice of the Niagara Plant closing. 29 U.S.C. §2102(a). Because the Debtor gave only five (5) days of (misleading) notice, the Debtor is liable to the Movants for fifty-five (55) days' salary and benefits under 29 U.S.C. §2104, in the amounts shown on Exhibit A. Since the

Niagara Plant closing and the Debtor's WARN Act violations occurred post-petition, the Movants are entitled to payment of the salary and benefits as administrative priority claims under §503 of the Bankruptcy Code.

In defiance of its legal obligations, Globe has refused to recognize the Movants' WARN Act claims, claiming that the Movants failed to submit a request for their payment as an administrative expense before the administrative expense bar date. However, the administrative expense bar date does not bar the Movants' WARN Act claims because (1) the WARN Act payments are "wages", automatically allowed as administrative claims under the Debtor's Plan, which the Debtor was required to pay without any administrative claim being filed; and (2) the Debtor never served the Niagara Salaried Employees with actual written notice of the bar date, as required by law.

1. The WARN Act Claims Are "Wages" Under The Plan.

Article I of the Plan provides the following definitions:

**"Administrative Claim" means** a Claim for payment of an administrative expense or cost of a kind specified in Bankruptcy Code section 503(b) and referenced in Bankruptcy Code sections 507(a)(1), 507(b) or 1114(e)(2) including, without limitation, the actual, necessary costs and expenses of preserving the Estate and operating the business of the Debtor, taxes incurred by the Debtor's estate, including **wages, salaries, or commissions for services rendered after the commencement of the Case** . . . .

**"Allowed Administrative Claim" means all or that portion of any Administrative Claim which** either (a) has become allowed by a Final Order or (b) **was incurred by the Debtor in the ordinary course of business during the Case and is due and owing under the terms and conditions of any agreements or applicable law.**

(emphasis added)

Bankruptcy courts consistently hold that where a debtor violates the WARN Act notice requirements post-petition, the statutory liability for "back pay" is a liability for wages. *See In re Beverage Enterprises, Inc.*, 225 B.R. 111 (Bankr. E.D. Pa. 1998); *In re Hanlin Group, Inc.*, 176

B.R. 329 (Bankr. D.N.J. 1995). WARN Act claims in those circumstances therefore are given priority as post-petition wage claims. Id.; *In re Riker Industries, Inc.*, 151 B.R. 823, 827 (N.D. Ohio 1993).

The Movants' WARN Act claims are entitled to administrative priority treatment because they are severance pay in lieu of notice and because the Debtor chose to incur that liability rather than continue operating the Niagara Plant for fifty-five more days. See *In re Campo Electronics Inc.*, 247, B.R. 646, 651 (E.D. La. 1998); *In re Health Maintenance Foundation*, 680 F.2d 619 (9th Cir. 1982); and *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir. 1976). Had the Debtor continued to operate the Niagara Plant for the fifty-five days necessary to avoid WARN Act liability, the Movants' salary earned during that period unquestionably would be a post-petition administrative expense. The WARN Act compensation payable to the Movants is a substitute for that salary, and similarly is entitled to administrative priority treatment.

2. The Debtor Incurred the WARN Act Payment Obligation in the Ordinary Course of Its Business.

The Debtor's own conduct in this case establishes that the WARN Act "wages" were incurred in the ordinary course of business. The Debtor had no authority to operate its business except "in the ordinary course of business", absent, notice, a hearing, and Court approval. See Bankruptcy Code Section 363(c)(1) ("... the [debtor in possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."). The Debtor never applied to the Court for authority to close the Niagara Plant, and never received any approval to do so. The reason is plain: to preserve its power contracts, the Debtor was taking the position that the plant closure was a temporary adjustment of its operations, not rising to the level of a non-ordinary course event.

Accordingly, by its conduct the Debtor has established that the Niagara Plant closure, and the attendant WARN Act claim created thereby, was in the "ordinary course" of its post-petition business. The Debtor therefore should be estopped from taking a contrary position now.

It thus is apparent that the Movants' WARN Act claims are wages, salaries, or commissions for services rendered after the commencement of the case incurred by the Debtor in the ordinary course of business during the case, and due and owing under the terms and conditions of applicable law. That is squarely within the definition of an Allowed Administrative Claim under Article I of the Plan.

It is axiomatic that, under the Bankruptcy Code, "the provisions of a confirmed plan bind the debtor .. ." 11 U.S.C. § 1141(a). A plan of reorganization binds the debtor and creditors to all of the plan's provisions. *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869 (2d Cir. 1991); *Garsal Realty, Inc. v. Troy Savings Bank (In re Garsal Realty, Inc.)*, 39 B.R. 991, 994 (N.D.N.Y. 1984)("general rule is that a confirmed plan of reorganization is binding on the debtor and other proponents of the plan."). The terms of a binding plan of reorganization should be literally enforced. *DiBerto v. Meadows at Madbury, Inc.*, 171 B.R. 461, 476 (Bankr. D.N.H. 1994)("If consensual plans are to be fostered, which is the underlying rationale of the present Code, settlements embodied in such plans must be enforced literally and strictly."). A confirmed plan of reorganization is a contract between the Debtor and its creditors, and binds both the Debtor and its creditors to the terms of the plan. *In re L & V Realty Corp.*, 76 B.R. 35, 37 (Bankr. E.D.N.Y. 1987)("At its simplest, a plan is an offer of promises made by the debtor and accepted by the creditors following serious and frequently protracted negotiations" quoting *In the Matter of United Merchants and Manufacturers, Inc.*, 10 B.R. 312 (Bankr. S.D.N.Y. 1981)).

Section 125 of the Debtor's Confirmed Plan provides that allowed administrative claims be paid as soon as practicable after the May 11, 2004 Effective Date. That time expired long ago.

3. The Administrative Bar Date Cannot Bar These Claims.

Even if the Movants' WARN Act claims were not already Allowed Administrative Claims under the Plan, as demonstrated above, the Court should allow those claims at this time, since the Movants did not receive constitutionally adequate notice of the administrative claims bar date before that date occurred.

Even if the Movants were required to file an administrative claim (1) this request for payment of an administrative expense for WARN Act compensation is timely, since the Administrative Bar Order was not effective as to them due to the inadequacy of the notice the Debtor gave, including its failure to serve the Movants with actual written notice of the bar date; and (2) even if this request is untimely, the Court should permit tardy filing under §503(a) for cause, based on the Debtor's failure to serve them with actual written notice of the administrative bar date in addition to the other equitable circumstances presented by this Motion.

(a) *The Published Notice Was Constitutionally Inadequate to Bar These Claims.*

It is undisputed that the Debtor did not provide actual notice of the administrative claim bar date to the Movants. The "notice" the Debtor provided was the publication of the legal notice attached as Exhibit E in the Wall Street Journal, the Niagara Gazette and the Marietta, Ohio newspaper on January 23 and January 30, 2004. That notice was inadequate as a matter of law to satisfy the procedural due process requirements of the Fifth Amendment of the United States Constitution, so as to effectively deprive the Movants of their property rights.

"Procedural due process" under the Fifth Amendment to the United States Constitution

requires that, to be constitutionally valid, an order providing for deprivation of rights or property must provide persons affected with reasonable notice and an opportunity to be heard on the issues. "Reasonable notice" is notice that is "reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a response." *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 735 (5th Cir. 1995) (citation omitted).

For notice purposes, bankruptcy law divides claimants into two types, "known" and "unknown." See, e.g., *In re Charter Co.*, 125 B.R. 650, 654 (M.D. Fla. 1991). Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and claims bar date. *City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 296 (1953). For unknown claimants, notification by publication generally will suffice. See *In re Argonaut Financial Services, Inc.*, 164 B.R. 107, 112 (N.D. Cal. 1994); *In re Thomas McKinnon Securities, Inc.*, 130 B.R. 717, 719-20 (Bankr. S.D.N.Y. 1991).

As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Service, Inc. v. Pope*, 485 U.S. 478, 490 (1988). An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950). A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983). Reasonable diligence focuses on the Debtor's own books and records. Claimants who are identifiable from those records through a diligent search are "reasonably ascertainable" and hence "known" creditors. *In re Brooks Fashion Stores, Inc.*, 124

B.R. 436 (Bankr. S.D.N.Y. 1991). Here, the Movants were the Debtor's employees when their claims arose and, according to the Debtor's assertions to its 401k plan administrator, at the time the Debtor published the bar date notice. Indeed, at virtually the exact time the Debtor was publishing the administrative bar date notice, it was mailing to the Movants their W-2 forms for the previous year. It is beyond sincere argument that the Debtor could have provided actual written notice of the bar date to the nine Movants, without any significant burden, if it wanted to give the Movants a fair opportunity to present their claims before the bar date.

However, it seems apparent that sincerity and fairness were not the guiding principles for the Debtor. The standard the Debtor followed was the "gotcha" rule: publish twice an obscure legal notice that didn't name the Movants, that didn't mention WARN Act claims, that was in language almost certain to be misunderstood by the average industrial employee, that gave, at most, less than thirty days' notice, and then wait for that (short) time to expire. The notice itself is susceptible of misunderstanding even by a lawyer as to whether the Movants' WARN Act claims were required to be filed. For example, the notice states that no claim need be filed for "expenses which arise and are due and payable in the ordinary course of the Debtor's business, or pursuant to transactions entered into by the Debtor with Bankruptcy Court approval." Does that include the WARN Act claims? As argued above, the Movants contend that the answer is in the affirmative. But even if the answer is negative, the published notice is so turgid and obfuscatory that it fails the test of being notice constitutionally adequate to extinguish the Movants' property rights.

Further, the Debtor's own employment records contained information that some of the Movants resided outside Niagara County, New York. The Debtor did not even publish the notice widely enough to be reasonably confident that all of the Movants could have read it.

Notwithstanding the Debtor's failure to provide the Movants with reasonable notice, they learned of the bar date from the labor union representatives for the Niagara Plant's hourly employees. The Movants hurriedly filed claims for their unpaid vacation pay, which the Debtor finally paid in 2005 after the Movants filed two motions to compel their payment.

But the fact that the Movants obtained some actual notice of the bar date does not cure the constitutionally inadequate nature of the notice the Debtor provided. If the Debtor seeks to bar the Movants' WARN Act claims by asserting the claim bar date, it must demonstrate its fulfillment of the constitutional minima for due process. This it cannot do.

(b)     *If Necessary, The Court Should Allow This Motion As A Late-Filed Claim.*

Under §503(a) of the Bankruptcy Code, "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the Court for cause." "Cause" is not defined in the Code or Bankruptcy Rules, but is left to the Court's sound discretion. *Cf. In re DP Partners Ltd. Partnership*, 106 F.3d 667 (5th Cir. 1997) (noting discretion enjoyed by bankruptcy court under §503(a)). The Movants respectfully urge the Court that, in the light of the circumstances presented in this Motion, if the Court determines that a claim is necessary, the Court should exercise its discretion in favor of allowing this Motion as a late-filed claim.

4.     *The Movants Are Entitled to Reasonable Attorney's Fees.*

Under 29 U.S.C. §2104(a)(6) a prevailing party recovering WARN Act compensation is entitled to seek a reasonable attorney's fee as a part of the costs of the action. In bankruptcy cases, those attorney's fees receive the same priority as the award itself, and are recoverable as administrative priority claims. *See In re Jamesway Corp.*, 242 B.R. 130 (Bankr. S.D.N.Y. 1999).

The Movants' counsel has devoted twenty-five (25) hours to the preparation and filing of

this Motion. His standard hourly rate is $250.00 per hour, which is well within the prevailing rate in the community for practitioners of his skill and experience. The product of those amounts is $6,250.00. The Movants do not believe that any adjustment increasing or decreasing that "lodestar" fee is appropriate. Accordingly, the Movants seek attorney's fees of $6,250.00, plus the additional reasonable fees and expenses that are incurred in prosecuting this motion after filing.

*Conclusion.*

Based upon the foregoing, the Niagara Salaried Employees pray for an Order directing the Debtor to pay to them the WARN Act wage claims detailed on Exhibit A to the Motion, together with interest at the legal rate from May 11, 2004 plus attorney's fees and expenses incurred in bringing this Motion in the amount of $6,250.00 plus the additional reasonable fees and expenses that are incurred in prosecuting this motion after filing.

Dated: Atlanta, Georgia
June 27, 2006

/s/ James C. Morton
James C. Morton (JM 6151)
Suite 1150, Two Midtown Plaza
1349 West Peachtree Street
Atlanta, Georgia 30309
(404) 966-5133

Counsel for Fred Carowick, Jr., Richard Cassett, Michael Goff, Kenneth Kasprzak, Anthony Mitro, Todd K. Schwartz, Ronald Stipp, Robert Tomaszewski and Robert Veltri