Timothy T. Brock (TB-4718)
Abigail Snow (AS-2960)
SATTERLEE STEPHENS BURKE & BURKE LLP
Counsel for Creditor Trustee
230 Park Avenue
New York, New York 10169
(212) 818-9200

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x
                                              :

In re:                                        :

                                        : Chapter 11

GLOBE METALLURGICAL INC.           :

                                        : Case No. 03-12006 (SMB)

                      Debtor,         :

                                              :

------------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## OF CREDITOR TRUSTEE FOR SUMMARY JUDGMENT

             Morton C. Batt, the Creditor Trustee, on behalf of the Globe Metallurgical Inc. Creditor Trust (the "Creditor Trust"), by his attorneys, Satterlee Stephens Burke & Burke LLP, moves pursuant to Federal Rule of Civil Procedure 56, as made applicable herein by Federal Rule of Bankruptcy Procedure 7056, and pursuant to the Court's directive at the October 12, 2006 hearing, for summary judgment in favor of the Creditor Trust declaring that the Reorganized Debtor is obligated to redeem the Reorganized Debtor Preferred Stock held by the Creditor Trust by the allocation of 20% of its Free Cash Flow to such redemption.

### PRELIMINARY STATEMENT

             The documents in this matter clearly confirm that the Reorganized Debtor is required to redeem the Reorganized Debtor Preferred Stock out of Free Cash Flow beginning with the fiscal year ended June 30, 2005.  This obligation is set forth in the Reorganization Plan,

the Certificate of Incorporation, and the Trust Agreement.[1]  While the redemption is subject to restrictions in the Exit Financing Agreements, the Exit Financing Agreement contained in the Plan Supplement explicitly carves out the redemption of the Reorganized Debtor Preferred Stock as an exception to restrictions on dividends and redemptions in order to permit the Reorganized Debtor to meet this obligation.  Further, the Reorganization Plan prohibits the Reorganized Debtor from materially restricting the rights of the Creditor Trust with respect to the Reorganized Debtor Preferred Stock in any refinancing.  Accordingly, this Court should declare that the Reorganized Debtor is obligated to redeem the Preferred Stock through the allocation of 20% of its Free Cash Flow to such redemption.

## FACTUAL BACKGROUND

1.      The Reorganized Debtor Preferred Stock (the "Preferred Stock"), in the amount of $2,500,000, was designed to be a vehicle through which the unsecured creditors of the Debtor were to receive a distribution on account of allowed unsecured claims.  See, "Declaration of Timothy T. Brock in Support of Motion of Creditor Trustee for Summary Judgment" dated October 23, 2006 (the "Brock Decl."), Exh. A at ¶ 130, p. 28; Exh. E at §§ 1.3, 3.1.  The Preferred Stock is one of the assets conveyed to the Creditor Trust for the benefit of the unsecured creditors, as set forth in the Reorganization Plan:

> Contributed Assets.  "Contributed Assets" means the Reorganized Debtor Preferred Stock, two percent (2%) of Reorganized Debtor Common Stock, the Avoidance and Other Actions (other than Released Claims and the NIMO Adversary Proceedings), the Unencumbered Assets and $100,000 in Cash.

Brock Decl., Exh. A at ¶ 26.

> Reorganized Debtor Preferred Stock.  "Reorganized Debtor Preferred Stock" means the shares of the Reorganized Debtor's

---

[1]      Capitalized terms not defined herein are as defined in the "Statement of Undisputed Facts in Support of Motion of Creditor Trustee for Summary Judgment" (the "Statement of Undisputed Facts").

preferred stock … in the amount of $2.5 million, to be issued pursuant to the Reorganized Debtor's Certificate of Incorporation and in a form substantially in the form included in the Plan Supplement . . .

Id. at ¶ 111.

Transfer of Property.  On the Effective Date … the Contributed Assets shall be conveyed, assigned, transferred and remitted to the Creditor Trust on behalf of and for the benefit of its beneficiaries.

Id. at ¶ 141.

2.      The Preferred Stock is to be redeemed by the Reorganized Debtor  through the allocation of twenty percent (20%) of the Reorganized Debtor's Free Cash Flow[2] to its mandatory redemption.  The Reorganization Plan states that "[t]he Reorganized Debtor Preferred Stock shall provide for its redemption based on twenty percent (20%) of the Reorganized Debtor's Free Cash Flow in an aggregate amount not to exceed $2.5 million …."  See, Brock Decl, Exh. A at ¶ 111).  The Trust Agreement states that the Preferred Stock is "to be redeemed by the Reorganized Debtor in accordance with the terms  [of the Reorganization Plan]."  See, Brock Decl, Exh. E at  section 3.1, p.4.  Redemption is also mandatory under the Certificate of Incorporation:

 (c)  Redemption Out of Free Cash Flow.  Subject to limitations and restrictions as required by the Financing Agreements and the dividend, redemption or liquidation preference of any Senior Shares, on or before September 30 of each fiscal year, beginning with September 30, 2005, the Corporation shall apply an amount equal to 20% of its Free Cash Flow during the immediately preceding fiscal year to redeem Series A Preferred at $1,000 per share in cash.

Brock Decl., Exh. F at Section B3(c), p.4 (emphasis added).  This redemption is to be completed by the fifth anniversary of the Effective Date of the Plan, or May 14, 2009.  Id. at Section B3(b),

---

[2]      "Free Cash Flow" is a defined term in the Reorganization Plan.  The technicalities of the definition are not an issue with respect to whether the redemption right is mandatory and would only become an issue in a dispute over the amount of Free Cash Flow out of which a redemption must be made.

p. 4; Brock Decl., Exh. E at section 3.3.[3]

       3.      While the Certificate of Incorporation makes the redemption subject to the Financing Agreements, the Exit Financing Agreement *explicitly carves out a redemption right for the Reorganized Debtor Preferred Stock* in the negative covenants contained therein:

> Each of Borrower and the Guarantors covenants and agrees that until payment in full of the Loan and all other Obligations, unless Borrower has received the prior written consent of Lender, Borrower and each Guarantor shall not, and shall not permit any of their respective Subsidiaries to:
>
>                         *     *     *
>
>        7.5   <u>Restricted Junior Payments</u>. Directly or indirectly declare, order, pay, make or set apart any sum for any Restricted Junior Payment, <u>except that</u>, so long as no Default or Event of Default shall have occurred and be continuing or would result therefrom, <u>Borrower may</u> (i) make payments of interest with respect to the New Subordinated Debt solely in accordance with the terms of the Subordination Agreement, and (ii) on or after the date 10 Business Days following delivery of financial statements required under <u>subsection 5.1(B)</u> <u>for any Fiscal Year ending on or after June 30, 2005, redeem for cash any of the Reorganized Debtor Preferred Stock (as defined in the Plan) in an amount not greater than the lesser of (a) 20% of Free Cash Flow (as defined in the Plan) for the Fiscal Year most recently ended and (b) $4,000,000</u>.[4]

Brock Decl., Exh. C at Section 7.5, pp. 39, 40 (emphasis added). It is manifestly clear that the mandatory redemption of the Preferred Stock is *not* restricted by the Exit Financing Agreement contained within the Plan Supplement, but rather is expressly provided for.

---

       [3]      The date of mandatory redemption may be extended up to 180 days under certain conditions. <u>Id</u>.

       [4]      When the Plan Supplement was filed the Preferred Stock was to have a value of $4-million. At that time, the Debtor was in a dispute with the Pension Benefit Guaranty Corporation (the "<u>PBGC</u>") concerning the termination of the Debtor's pension plans. The dispute was settled with the Debtor agreeing to continue its pension plans and the PBGC withdrawing its nearly $12-million in claims against the Debtor's estate. As described in the Debtor's "Motion for Approval of (I) Proposed Agreement Between the Debtor and the Pension Benefit Guaranty Corporation Regarding Funding of the Debtor's Pension Plans and (II) Modification of the Debtor's Proposed Plan of Reorganization in Connection Therewith Without Need for Further Solicitation of Votes," [docket #424], the effect of the withdrawal of the PBGC claims and the reduction in the amount of the Preferred Stock to $2.5-million was neutral with respect to the anticipated distribution to the remaining unsecured creditors.

670279_1

4.     The Reorganization Plan required that the Reorganized Debtor enter into the Exit Financing Agreements in substantially the form as those contained in the Plan Supplement,[5] and also permits the Debtor to enter into subsequent refinancing agreements *provided such agreements do not materially restrict the rights of the Creditor Trust, as holder of the Preferred Stock*:

> Exit Financing Agreements. "Exit Financing Agreements" means those agreements setting forth the terms of the Exit Facility, which material agreements shall be substantially in the form contained in the Plan Supplement, between the Debtor and the Exit Financing Lender. For all purposes related to the Reorganized Debtor Preferred Stock, "Exit Financing Agreements" also means any agreement setting forth the terms of any refinancing of the Exit Facility or Toll Processing Agreement, provided such agreements are not materially more restrictive of the rights of the holders of the Reorganized Debtor Preferred Stock than the Exit Financing Agreement and Toll Processing Agreement entered into on the Effective Date.

Brock Decl., Exh. A at ¶ 51 (emphasis added).

5.     The Notice of Plan Supplement and the definition of Exit Financing Agreements in the Reorganization Plan anticipate that the Exit Financing Agreements will be in *substantially the same form as the draft* contained in the Plan Supplement. See, Brock Decl., Exh. A at ¶ 51; Exh. B at ¶ 2. The Exit Financing Agreements and any subsequent refinancing agreements must permit the redemption of Preferred Stock. Accordingly, the redemption right which the Creditor Trust holds in the Preferred Stock is both mandated by the Reorganization Plan, Trust Agreement and Certificate of Incorporation, and permitted by the Exit Financing Agreement.

---

[5]     Counsel for the Creditor Trustee has never been provided with a copy of the executed Exit Financing Agreements which were entered into on or about the Effective Date.

670279_1

## ARGUMENT

### THE REORGANIZED DEBTOR IS BOUND BY
### THE TERMS OF THE PLAN AND PLAN SUPPLEMENT
### <u>WHICH EXPRESSLY COMMAND AND PERMIT REDEMPTION</u>

A confirmed plan of reorganization is a contract between the Debtor and its creditors, and binds both the Debtor and its creditors to the terms of the plan. In re L & V Realty Corp., 76 B.R. 35, 37 (Bankr. E.D.N.Y. 1987)("At its simplest, a plan is an offer of promises made by the debtor and accepted by the creditors following serious and frequently protracted negotiations" quoting In the Matter of United Merchants and Manufacturers, Inc., 24 C.B.C. 220 (Bankr. S.D.N.Y. 1981)); Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869 (2d Cir. 1991); Garsal Realty, Inc. v. Troy Savings Bank (In re Garsal Realty, Inc.), 39 B.R. 991, 994 (N.D.N.Y. 1984)("general rule is that a confirmed plan of reorganization is binding on the debtor and other proponents of the plan."). The terms of a binding plan of reorganization should be literally enforced. DiBerto v. Meadows at Madbury, Inc., 171 B.R. 461, 476 (Bankr. D.N.H. 1994)("If consensual plans are to be fostered, which is the underlying rationale of the present Code, settlements embodied in such plans must be enforced literally and strictly.").

The meaning of the Plan and Plan Supplement is a matter of law for this Court to decide under generally accepted principles of contract interpretation. Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F2d 884, 889 (2d Cir. 1990)("if a contract is unambiguous on its face, its proper construction is a question of law."); In re Okura & Co. (America), Inc., 249 B.R. 596, 603 (Bankr. S.D.N.Y. 2000)(if contract is unambiguous, court must enforce "plain, ordinary and common meaning"); L & V Realty, 76 B.R. at 37 (plan provisions "should be interpreted in light of general contract principles"); Shugrue v. Pension Benefit Guaranty Corp. (In re Ionosphere Clubs, Inc.), 147 B.R. 855, 862 (Bankr. S.D.N.Y. 1992)(parties' rights "should be fathomed" from terms expressed in unambiguous contract). New York courts consistently hold that

unambiguous contractual provisions are "entitled to be enforced according to [their] terms.[6]
Uribe v. Merchs. Bank, 91 N.Y.2d 336, 341, 670 N.Y.S.2d 393, 396 (1998); W.W.W. Assocs.,
Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440 (1990)("[W]hen parties set down
their agreement in a clear, complete document, their writing should as a rule be enforced
according to its terms.").

The Plan and Plan Supplement are unambiguous with respect to the redemption
right of the Creditor Trust in the Preferred Stock, without resort to extrinsic evidence, and thus
their meaning may be appropriately determined by the Court on summary judgment. As set forth
above, the Debtor proposed a Plan and Plan Supplement – the result of negotiations among the
Debtor, the secured lender and the Official Committee of Unsecured Creditors[7] – which set forth
specific contractual provisions for the benefit of the unsecured creditors. The Plan and Plan
Supplement were approved by the Court and the Effective Date of the reorganization occurred on
May 14, 2004. In essence, the Plan and Plan Supplement created a Creditor Trust, transferred to
that Creditor Trust Reorganized Debtor Preferred Stock in the amount of $2.5-million, and
specified that redemption of the stock was to commence ninety (90) days after the close of the
fiscal year ended June 30, 2005, by the allocation of 20% of the Reorganized Debtor's Free Cash
Flow to such redemption. In furtherance of this bargained-for right, the Exit Financing
Agreement contained within the Plan Supplement specifically permitted this redemption to
occur. There would be no purpose in one portion of the agreement requiring that the redemption

---

[6] While the Reorganized Debtor is a Delaware Corporation, the interpretation of the contract formed
by the Plan and Plan Supplement is one of New York State law, as the Plan, Exit Financing Agreement and Trust
Agreement are each governed by New York law. See, Brock Decl, Exh. A at ¶ 188, Exh. C at section 10.13, Exh. E
at section 13.7.

[7] The interests of the unsecured creditors were represented during the bankruptcy by an Official
Committee of Unsecured Creditors (the "Committee") and, subsequent to the Effective Date, by the Creditor
Trustee. Satterlee Stephens Burke & Burke LLP has served as counsel sequentially to the Committee and the
Creditor Trustee.

670279_1

begin in 2005 if at the same time the Reorganized Debtor could enter into new Financing Agreements and cut this right off without the knowledge of the Creditor Trustee. Accordingly, the Reorganized Debtor may neither ignore the provisions in the agreement of the parties which both require and permit redemption of the Preferred Stock, nor may it change the agreed-upon terms and conditions subsequent to confirmation and take away a bargained-for right of the Creditor Trust. Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990)("The parties' having agreed upon their own terms and conditions, 'the courts cannot change them and must not permit them to be violated or disregarded . . .'" (citations omitted)); In re Enron Corp., 349 B.R. 96 (Bankr. S.D.N.Y. 2006)("'an interpretation which gives . . . [an] effective meaning to all the terms is preferred to an interpretation which leaves a part . . . of no effect.'"(quoting Restatement (Second) of Contracts § 203 (1981)).

## CONCLUSION

WHEREFORE, the Creditor Trustee respectfully requests that this Court grant his motion and declare that the Reorganized Debtor is obligated under the Plan and Plan Supplement to redeem the Reorganized Debtor Preferred Stock held by the Creditor Trust by the allocation of 20% of its Free Cash Flow to such redemption.

Dated: New York, New York
        November 3, 2006

                    SATTERLEE STEPHENS BURKE & BURKE LLP
                    Attorneys for the Creditor Trustee


                    By: _/s/ Timothy T. Brock_____
                            Timothy T. Brock (TB-4718 )
                            Abigail Snow (AS-2960)
                        230 Park Avenue
                        New York, New York 10169
                        (212) 818-9200

670279_1